UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GENESIS MARTINEZ, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) No. 1:21-CV-01181 ) |
| v. | ) ) Judge Edmond E. Chang |
| RALPH LAUREN CORPORATION, INC., | ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Genesis Martinez used to work for clothing manufacturer Ralph Lauren, but now has filed this proposed class action against the company. Martinez alleges that Ralph Lauren violated the Illinois Biometric Information Privacy Act (often referred to by its acronym, BIPA). 740 ILCS 14/1, *et seq*. R. 1-1, Compl.[1] The Act prohibits private entities from collecting any "biometric identifier"—including fingerprints— from a person unless that person has consented in writing and the private entity has provided certain disclosures. 740 ILCS 14/15(b). Under Section 15(a) of the Act, collectors of biometric identifiers must develop, publicly disclose, and follow a data retention and destruction policy for the biometric information. 740 ILCS 14/15(a). Martinez alleges that Ralph Lauren violated the Act by scanning, collecting, storing, and using employees' fingerprints and biometric information for its clock-in, clock-out timekeeping system without proper written consent and without making required

---

[1]Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation.

disclosures. The suit was initially filed in state court, and Ralph Lauren invoked diversity jurisdiction, 28 U.S.C. § 1332(a)(1), and jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), to remove the case to federal court. R. 1, Def.'s Notice of Removal at 3. Ralph Lauren has now moved to dismiss Martinez's Complaint under Rule 12(b)(6) and has also moved to stay proceedings pending four separate appellate decisions—each in a different court and in a different procedural posture—that Ralph Lauren argues will materially impact the present case. R. 13, Def.'s Mot. Stay; R. 14, Def.'s Br. Mot. Stay. Two of the four cases relied on by Ralph Lauren have now been decided, and they did not end up undermining Martinez's case. The two remaining cases, *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156 (7th Cir. 2021) (at the time, 467 F. Supp. 3d 604 (N.D. Ill. 2020)) and *Marion v. Ring Container Technologies, LLC*, No. 3-20-0184 (Ill. App. Ct.), do not warrant a continued stay. For the reasons set forth below, Martinez's claim under Section 15(a) (that is, the data-retention policy claim) is terminated for now in order for the parties to file position papers regarding standing. As to the claims under Section 15(b), the motion to dismiss is denied, as is the motion to stay.

## I. Background

For purposes of this motion, the Court must accept as true the allegations in the Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Ralph Lauren is incorporated in Delaware with its principal place of business in New York. Def.'s Not. of Removal at ¶ 10. The Defendant is in charge of the Polo Ralph Lauren brand of retail stores in Illinois. Compl. ¶ 8. Martinez worked at the Ralph Lauren facility in Aurora,

2

Illinois from May 2018 to August 2019. *Id.* ¶¶ 7, 17. For purposes of diversity jurisdiction, Ralph Lauren is a citizen of Delaware and New York, and Martinez is a citizen of Illinois. Def.'s Not. of Removal ¶ 10.

Throughout Martinez's employment, Ralph Lauren scanned, collected, and stored digital copies of her fingerprints. Compl. ¶ 18. Each time that Martinez worked a shift, she placed her finger on a fingerprint scanner. *Id.* ¶¶ 18–19. Each time she left a shift, she did the same. *Id.* When Martinez scanned her fingerprint, the technology matched the new scan to the digital copy of her fingerprints stored in an electronic database. *Id.* ¶ 19. The fingerprint-matching technology confirmed the employees' credentials, and then they could clock in and clock out of work. *Id.*

Despite collecting this biometric information, Ralph Lauren never obtained consent or a written release from Martinez (or the other class members whom she seeks to represent) for the collection, capture, storage, or use of her biometric data. Compl. ¶¶ 20–22, 34–36. Ralph Lauren also never informed Martinez that her biometric identifiers were being collected, stored, or otherwise obtained and did not tell her, in writing or otherwise, the purpose and length of time for which her biometric information was being collected and used. *Id.* ¶ 36. Finally, Ralph Lauren failed to publish a retention schedule or guidelines for permanently destroying her biometric identifiers and biometric information. *Id.* ¶¶ 24, 37. In fact, Ralph Lauren acknowledges that it does not have a biometric-data retention policy, let alone a publicly available one. R. 12, Def.'s Br. at 7–8. As a result of Ralph Lauren's collection, storage, and use of the employees' biometric data—as well as Ralph Lauren's failure to develop

3

and publish a retention policy—Martinez alleges that Ralph Lauren violated the employees' right to maintain control over their own biometric identifiers and biometric information. Compl. ¶ 23.

Based on these allegations, Martinez filed suit against Ralph Lauren in Illinois state court, alleging certain violations of the Illinois Biometric Information Privacy Act, which has come to be known as BIPA for short. *See* Compl. Specifically, Martinez brings claims under two separate sections of BIPA:

- *Retention Schedule*: Section 15(a), which requires companies to maintain a public retention and destruction schedule before collecting biometric data, 740 ILCS 14/15(a); and

- *Consent to Collect*: Section 15(b), which requires companies to obtain written consent before collecting biometric data, 740 ILCS 14/15(b).

Compl. ¶¶ 11–13. In addition, Martinez seeks to represent a class of other Illinois Ralph Lauren employees who were required to scan their fingerprints into the biometric time-clock system. *Id*. ¶¶ 25–29. The proposed class is alleged to be in the hundreds of members. *Id*. ¶ 26.

Ralph Lauren has removed the case to federal court, alleging diversity jurisdiction, 28 U.S.C. § 1332(a), as a basis for subject matter jurisdiction. Def.'s Notice of Removal. Specifically, Ralph Lauren alleges that the parties are of diverse citizenship and the amount in controversy exceeds $75,000. *Id*. ¶¶ 10–14. On the amount-in-controversy question, Ralph Lauren notes that Martinez satisfies the $75,000 amount-in-controversy requirement easily under the theory that each unauthorized scan of her fingerprint is a separate BIPA violation. *Id*. ¶ 13. Given Martinez's requests for statutory damages in the Complaint, Ralph Lauren offers two separate damages

4

calculations, one using $1,000 per violation and one using $5,000 per violation. *Id.* Under either calculation, if Martinez scanned her fingerprint twice each workday, she satisfied the $75,000 within the first few months of her employment. *Id.* ¶¶ 13–14.

Ralph Lauren has also moved to stay the case pending decisions in (1) *McDonald v. Symphony Bronzeville Park LLC*, 174 N.E.3d 578 (Ill. App. Ct.2020) (appeal granted *McDonald v. Symphony Bronzeville Park, LLC*, 163 N.E.3d 746 (Ill. 2021)); (2) *Tims v. Black Horse Carriers, Inc.*, — N.E.3d —, 2021 WL 4243310 (Ill. App. Ct. 2021), appeal allowed, 2022 WL 808656 (Ill. Jan. 26, 2022); (3) *Marion v. Ring Container Technologies, LLC*, No. 3-20-0184 (Ill. App. Ct.); and (4) the interlocutory appeal in *Cothron v. White Castle Sys.*, 467 F. Supp. 3d 604 (N.D. Ill. 2020). Ralph Lauren argues that the decisions in these cases will materially impact the issues in this case. *See* Def.'s Mot. Stay. Martinez agreed that a stay pending the decision in *Tims* (which has since been decided, as discussed below) would be appropriate, but objected to a stay pending decision in the other three cases. Pl.'s Br. at ¶¶ 10–13.

## II. Legal Standards

This Court has an independent obligation to ensure that it has subject matter jurisdiction over a case before deciding the merits. *See United States v. $304,980.00 in U.S. Currency*, 732 F.3d 812, 817 (7th Cir. 2013). Removal of a case to federal court is generally governed by 28 U.S.C. § 1441. Generally speaking, so long as a case could have been filed in federal court, the case may be removed. 28 U.S.C. § 1441(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Ne. Rural Elec. Membership Corp.*

*v. Wabash Valley Power Ass'n*, 707 F.3d 883, 890 (7th Cir. 2013). And, as always, "subject-matter jurisdiction is the first issue in any case." *Miller v. Southwest Airlines Co.*, 926 F.3d 898, 902 (7th Cir. 2019). If, after removal, "it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. 1447(c); *see also Collier v. SP Plus Corporation*, 889 F.3d 894, 895 (7th Cir. 2018) (*per curiam*) (explaining that remand is required when jurisdiction is lacking). "[T]he party seeking removal … bears the burden of establishing federal jurisdiction." *Tri-State Water Treatment, Inc. v. Bauer*, 845 F.3d 350, 352 (7th Cir. 2017). So in removal cases such as this, the defendant bears the burden of showing that the plaintiff had Article III standing at the time of removal. *Collier*, 889 F.3d at 896. When determining whether a defendant has met this burden, the Seventh Circuit has cautioned that "[c]ourts should interpret the removal statute narrowly," *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009), and resolve doubts about removal in favor of the plaintiffs' choice of forum in state court, *Morris v. Nuzzo*, 718 F.3d 660, 668 (7th Cir. 2013).

On the motion to dismiss, under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than

6

on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

On the motion to stay, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). The parties and issues in two suits need not be identical for a court to stay proceedings in one suit pending a decision in another. *See id.* District Courts may consider a variety of factors in deciding whether to grant a stay, *Depuy Synthes Sales, Inc. v. Orthola, Inc.*, 953 F.3d 469, 477 (7th Cir. 2020), and in this jurisdiction courts often look to " (i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (ii) whether a stay will simplify the issues in question and streamline the trial, and (iii) whether a stay will reduce the burden

of litigation on the parties and on the court." *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009) (cleaned up).[2]

### III. Analysis

### A. Subject Matter Jurisdiction

Following this case's removal to federal court, Martinez notified the Court that she did not intend to seek remand back to state court. R. 9, Pl.'s Notice Regarding Remand. But this Court must raise subject-matter-jurisdiction issues *sua sponte* and must do so here based on its independent obligation to establish jurisdiction before reaching the merits of a case. *United States v. $30,980.00,* 732 F.3d at 817. If the Court determines that it does not have subject matter jurisdiction, it is required to dismiss the action. As the party invoking federal jurisdiction, Ralph Lauren bears the burden of establishing that federal jurisdiction applied at the time of removal. *Collier*, 889 F.3d at 896 (citing *Lujan v. Def. of Wildlife*, 504 U.S. 555, 561 (1992)) ("The party invoking federal jurisdiction bears the burden of establishing" Article III standing). Plaintiffs in federal court have Article III standing to sue if they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)(2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at

---

[2]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

1548 (citing *Lujan*, 504 U.S. at 560). A "bare procedural violation, divorced from any concrete harm" does not satisfy the injury-in-fact requirement of Article III. *Id*. at 1549; *see also Collier*, 889 F.3d at 896 (plaintiff must have "suffered an injury beyond a statutory violation"). "Instead, the plaintiff must show that the statutory violation presented an appreciable risk of harm to the underlying concrete interest that [the legislature] sought to protect by enacting the statute." *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017) (cleaned up).

Here, the jurisdictional issue arises from the nature and concreteness of the injuries for the alleged violation of Section 15(a) of the Biometric Information Privacy Act. The Act as a whole was the Illinois General Assembly's response to the expanding use of biometrics "in the business and security screening sectors" as Chicago and other parts of Illinois became "pilot testing sites for new applications of biometric-facilitated financial transactions." 740 ILCS 14/5(a), (b). The legislative findings acknowledged that the "full ramifications of biometric technology are not fully known," but nonetheless noted that the immutability of biometric information means that once such type of information is compromised—unlike Social Security numbers and other personal identifiers—"the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id*. § 14/5(c). Given the consequences of biometric-identity theft, the General Assembly found that the "public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." *Id*. § 14/5(g).

9

To implement those goals, Section 15(b) of the Act prohibits private entities from collecting, capturing, or otherwise obtaining a person's biometric information without informed written consent. *Id*. § 14/15(b). Section 15(a) requires private entities that possess biometric information to develop, publicly disclose, and comply with a data retention schedule, including providing for the permanent destruction of biometric information after its initial purpose is satisfied, but in no event later than three years from the person's last interaction with the entity. *Id*. § 14/5(a).

Neither party has raised the issue of standing in this case, but based on the Complaint and Ralph Lauren's responsive pleadings, Martinez likely lacks an Article III "injury in fact" for the retention-policy claim under Section 15(a) of the Act. The Seventh Circuit has issued two particularly important decisions addressing Article III standing under BIPA. *See Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617 (7th Cir. 2020); *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146 (7th Cir. 2020). *Bryant* held that plaintiffs suing under Section 15(b) (the informed-consent provision) generally do meet the requirements for Article III standing, because the deprivation of the right to make informed choices about inherently sensitive biometric information is a concrete harm (akin to a privacy invasion). 958 F.3d at 626. So the Court does have jurisdiction to hear Martinez's claim under Section 15(b) of the Act.

On the retention-policy provision, however, *Bryant* narrowly held that the injury-in-fact requirement is not met if a person merely complains that the information collector, here, Ralph Lauren, failed to publicly disclose the policy. 958 F.3d at 626. The Seventh Circuit reasoned that Bryant had alleged only that a *generalized* duty

10

of disclosure to the public had been violated, with no accompanying particularized harm to Bryant. *Id.* ("[T]he duty to disclose under section 15(a) is owed to the public generally, not to particular persons whose biometric information the entity collects.").

But later the Seventh Circuit, in *Fox*, explained that *Bryant* made no broad statement on whether *violations* of the required retention policies under Section 15(a) satisfy the injury-in-fact element of standing. *Fox,* 980 F.3d at 1154. In *Fox*, the Seventh Circuit emphasized that *Bryant* considered *only* the theory invoked there—a violation of the generalized duty to *publicly disclose* the retention policy—"and did *not* address other provisions" in Section 15(a). *Id.* (emphasis in original). *Fox* held that, moving beyond the general duty to publicly disclose a retention policy, an injury in fact does arise from violations of the data-retention requirements themselves. *Id.* The Seventh Circuit explained that an "unlawful retention of biometric data inflicts a privacy injury in the same sense that an unlawful collection does" and thus is "as concrete and particularized an injury" as violations of Section 15(b). *Id.* at 1154.

The Section 15(a) claim in this case mirrors *Bryant*, not *Fox*. Martinez cites *Bryant* for the proposition that the failure to publish retention and deletion policies by itself is actionable, even without a compliance violation. Pl.'s Br. at 5. But for the purposes of Article III standing, the key question here is not whether the conduct is actionable but rather whether Martinez suffered an injury-in-fact. Martinez alleges that Ralph Lauren failed to publicly *publish* a data retention schedule and destruction policy in violation of Section 15(a). Compl. ¶ 37. That is a generalized failure to disclose a retention policy; it is not an allegation that Ralph Lauren has failed to

11

comply with a retention policy. *Bryant* says that a violation of that sort does not qualify as the type of injury in fact needed for Article III standing. 958 F.3d at 626. So there is serious doubt as to whether the court has subject matter jurisdiction over the Section 15(a) retention-policy claims.

Having said that, because the Court has raised this issue on its own, the parties will be allowed to file position papers addressing whether the current allegations under Section 15(a) sufficiently allege an injury-in-fact. If the position papers reveal that the current Complaint is sufficient in establishing standing (which would be surprising), then Ralph Lauren may refile its motion to dismiss the claims brought under 15(a). Martinez may also ask the Court for leave to amend the Complaint if she believes there are additional facts that could establish standing (which would be equally surprising given that both parties have acknowledged that Ralph Lauren did not have any data-retention policy at all). If the holding that Martinez lacks standing remains in place after the filing of the position papers, then her claims under Section 15(a) will be severed and remanded to state court. The position papers are due by April 14, 2022.

### B. Motion to Dismiss

Turning next to the motion to dismiss the informed-consent claim (brought under Section 15(b) of BIPA), Ralph Lauren advances three other arguments in favor of dismissal: (1) the Complaint fails to adequately plead that Ralph Lauren acted with a culpable state of mind; (2) the claims are barred by a one-year statute of limitations;

12

and finally, alternatively, Martinez's claim is preempted by the Illinois Workers' Compensation Act.[3]

### 1. State of Mind

Ralph Lauren contends that the Complaint does not adequately plead that Ralph Lauren acted recklessly, intentionally, or negligently in violating BIPA. Def.'s Br. at 5–7. This state-of-mind requirement matters because Section 20 of the Act quintuples the statutory damages award when a biometric-information collector acts with recklessness or intent. For negligent violations, a prevailing plaintiff may recover "for each violation" "liquidated damages of $1,000 or actual damages, whichever is greater." 740 ILCS 14/20(1). For reckless or intentional violations, the plaintiff may recover actual damages or liquidated damages of $5,000 (instead of $1,000) per violation. 740 ILCS 14/20(2).

Arguably, there is no absolute requirement that a plaintiff plead the culpable state of mind—whether negligence, recklessness, or intent—in order to adequately allege a violation of the Act. Injunctive relief, for example, might very well be available even absent negligence: Section 20(4) authorizes "other relief, including an injunction, as the State or federal court may deem appropriate." 740 ILCS 20(4). The culpable states of mind appear in the *monetary*-relief provisions of Section 20. "While BIPA

---

[3]Ralph Lauren also argues that Martinez has failed to plead facts establishing that her claim under Section 15(A) is ripe. But as discussed in the text of the Opinion, this Court does not reach the merits for the claims brought under Section 15(a) because there appears to be no Article III standing. It is worth noting, however, that Ralph Lauren's ripeness argument mischaracterizes Martinez's Section 15(a) claim. Martinez does not allege that Ralph Lauren failed to comply (or will fail to comply) with a data-retention policy, but rather that the company failed to have a retention and destruction policy *at all*. Pl.'s Reply at 4–5.

subjects defendants to a damage remedy only if there is negligence, recklessness, or willfulness, the cases have split as to whether a defendant's mental state is a pleading requirement." *Figueroa v. Kronos Inc.*, 454 F. Supp. 3d 772, 786 (N.D. Ill 2020).

In any event, there is no need to decide that issue right now in this case, because Martinez has pleaded enough on recklessness and intent. Remember that Rule 12(b)(6) dismissal motions must be evaluated by assuming the factual allegations to be true and by giving reasonable inferences to the plaintiffs. On top of that, the pleading standard is just *plausibility* of the *allegations*—not a requirement of certainty or admissible evidence on the claim. Here, the Act was enacted by the Illinois General Assembly in 2008—around 10 years before the alleged violations happened. Ralph Lauren allegedly captured and used the Plaintiffs' biometric information in or around 2018. Yet, more than one decade after the Act's passage, Ralph Lauren still violated the Act. On top of that, Ralph Lauren is not a small company with limited resources in keeping pace with the state laws under with Ralph Lauren operates. Giving Martinez the benefit of reasonable inferences, those allegations in this context are enough to satisfy the plausibility standard. To be sure, discovery might undermine the recklessness or intent allegation, and at a trial, the shoe would be on the other foot, with Martinez bearing the burden of proof. But at the pleading stage, Martinez has alleged enough.

### 2. Statute of Limitations

According to Ralph Lauren, the Complaint must also be dismissed in its entirety because Martinez's BIPA claims are time-barred by a one-year statute of

14

limitations. But the Illinois Appellate Court First District's decision in *Tims*, decided after Ralph Lauren filed its motion, forecloses that argument for now.[4] The plaintiffs in *Tims* allege that their employer, Black Horse Carriers, Inc., collected, stored, used, and disseminated their biometric data through its fingerprint-timekeeping technology, just as Martinez alleges here. *Tims*, 2021 WL 4243310, at *1. By now, this should sound familiar. The *Tims* plaintiffs alleged violations of Sections 15(a), (b), and (d) of BIPA. *Id.* BIPA itself does not contain a statute of limitations so the courts have been tasked with discerning the applicable period. 740 ILCS 14/1 *et seq.* In the parties' briefing, Ralph Lauren says the BIPA claims are governed by Illinois' one-year statute of limitations for "[a]ctions for slander, libel or for publication of matter violating the right of privacy," 735 ILCS 5/13-201. Martinez responds that the applicable limitations period is five years. Def.'s Br. at 8–11; Pl.'s Br. at 5–7. *Tims* addressed this precise issue (and in *Marion*, the parties have also presented the possibility of a two-year limitations period).

The Illinois Supreme Court has not yet resolved this question, but *Tims* held that as to Sections 15(a) and 15(b), the five-year statute of limitations contained in Section 13-205 applies. *Tims v. Black Horse Carriers, Inc.*, 2021 WL 4243310, at *6. The appellate court reasoned that although the duties under Sections 15(a) and 15(b) concern privacy, actions brought under these sections do not require allegations of publication or disclosure, so they are not actions for "publication of matter violating

---

[4]The Illinois Supreme Court has since granted leave for appeal in *Tims*, 2022 IL 127801, but there are no persuasive reasons that convinces this Court that the Illinois Supreme Court will decide the issue differently than the First District Appellate Court.

15

the right of privacy," which are the category of cases covered by the one-year limitations period in Section 13-201. *Id.* at *5. This Court follows the appellate court's decision in *Tims* absent any persuasive reasons to think that the Illinois Supreme Court would decide differently. *See Nationwide Agribusiness Ins. Co. v. Dugan*, 810 F.3d 446, 450 (7th Cir. 2015). Martinez is correct that BIPA claims under Sections 15(a) and 15(b) are subject to the five-year limitations period set by 735 ILCS. 5/13-205. *Tims*, 2021 WL 4243310, at *6.

Ralph Lauren's statue of limitations argument also implicates the related issue of claim accrual, which the Court discusses below in deciding the motion to stay. Def.'s Br. at 11–13. But for the purposes of deciding the statute of limitations issue as argued by Ralph Lauren, the Court need not determine whether Martinez's BIPA claims accrued only when the company collected her biometric data the *first* time or whether instead a separate claim accrued *each* and every time she clocked in and out of work and scanned her fingerprints. The applicable statute of limitations of five years means that even the earliest possible date of accrual (May 2018), Martinez filed on time in January of 2021. Martinez's claims are not time-barred and Ralph Lauren's argument on that point is rejected.

### 3. Illinois Workers' Compensation Act

Ralph Lauren argues in the alternative that Martinez's claims are preempted by the Illinois Workers' Compensation Act. Def.'s Br. at 13–15. Martinez responds that every Illinois state and federal court addressing this issue has spoken unanimously that the Workers' Compensation Act does not preempt BIPA. Pl.'s Br. at 7–

16

10. The Court need not address the parties' substantive arguments on this question because the Illinois Supreme Court has definitively decided the issue with its opinion in *McDonald*: the Workers' Compensation Act does not preempt BIPA claims in the employment context. 2022 WL 318649. Illinois' highest court has now agreed with the intermediary appellate court that BIPA violations are akin to privacy right violations and are not the type of injuries addressed by the Workers' Compensation Act. *McDonald*, 2022 WL 318649, at *9. The voice of the Illinois Supreme Court binds the Court on this question of state law. *See In re Air Crash Disaster near Chi.*, 644 F.2d 594, 606 (7th Cir. 1981). The motion to dismiss is denied.

### C. Motion to Stay

Turning to the motion to stay, Ralph Lauren relied on four cases, arguing that this case should be stayed pending the Illinois Supreme Court's decision in *McDonald v. Symphony Bronzeville Park, LLC*, the Illinois Appellate Court First District's decision in *Tims v. Black Horse Carriers, Inc.*, the Illinois Appellate Court Third District's decision in *Marion v. Ring Container Technologies, LLC*, and the Seventh Circuit's decision in *Cothron v. White Castle System, Inc.* Martinez did not oppose a stay based on the then-pending decision in *Tims*, but did oppose a stay pending the outcomes in *Marion*, *McDonald*, and *White Castle*. Pl.'s Br. at 1, 10–13. Since the filing of Ralph Lauren's motion, decisions have been issued in two cases: *Tims*, — N.E.3d —, 2021 WL 4243310 (Ill. App. Ct. 2021),[5] and *McDonald*, — N.E.3d —, 2022 WL 318649 (Ill. 2022). And the Seventh Circuit has certified the question of state law in *Cothron* to

---

[5]The Illinois Supreme Court has also since granted leave for appeal in *Tims*. 2022 WL 808656.

17

the Illinois Supreme Court, *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156 (7th Cir. 2021). As discussed, *McDonald* and *Tims* have been decided, so the argument for a stay pending those cases is now moot. The Third District of the Illinois Appellate Court still has *Marion* before it for consideration. It is possible that *Marion* will come out differently and create a district split, but the mere possibility of a split is not enough by itself to warrant a stay here, especially given the persuasive reasoning in *Tims*. That leaves *Cothron*.

### 1. Claim Accrual

Ralph Lauren relies on the pendency of *Cothron v. White Castle Sys., Inc.*, which was pending before the Seventh Circuit as an interlocutory appeal at the time of the company's filing. Def.'s Br. Mot. to Stay at 2–3. Just as Ralph Lauren takes scans of Martinez's fingerprints for timekeeping purposes, so too did White Castle scan its employees' fingerprints. *Cothron*, 20 F.4th at 1158. The operative question in *Cothron* is whether the alleged BIPA violations accrue only the *first* time an employee scans their fingerprints or whether each subsequent, *separate* fingerprint scan constitutes a separate violation. *Id.* at 1158–59. Put another way, does a claim accrue only on the date of the first biometric scan, or does the statute of limitations begin to run separately for each scan? Given that this is a question of Illinois state law and implicates "state accrual principles as applied to this novel state statute," *id.*, the Seventh Circuit has certified this question to the Illinois Supreme Court. Although the question in *Cothron* was at a different procedural stage when Ralph Lauren filed its motion to stay, the Illinois Supreme Court is now set to answer the certified

18

question. *See* Notice from the Supreme Court of Illinois, *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156 (7th Cir. 2021) (No. 20-3202 at Entry 77). The issue as it has been presented to the Illinois Supreme Court does squarely apply to Martinez's BIPA allegations, and the decision on BIPA claim accrual will bind this Court. Ralph Lauren says that a stay is warranted because the scope of the potential class, the number of underlying allegations, and the extent of possible damages could vary depending on the Illinois Supreme Court's decision on the question of claim accrual. Def.'s Br. Mot. Stay at 4–7.

All of that is true, but the potential for the scope of this particular case to change does not justify completely halting the case and delaying discovery. Even absent a multiple-accrual theory for each separate scan, this case has substantial stakes in play. Martinez estimates a class size in the hundreds, Compl. ¶ 26, and given the statutory damages of $1,000 for even non-willful violations, the potential damages are significant. It is true that both sides probably do want to know the answer to the multiple-accrual question in *Cothron* before resolving the case completely. But that is not a reason to get delay discovery in its entirety. Instead, it is best to move forward with discovery on the merits of Martinez's individual claim and on the propriety of class certification now, and thus be in an advanced position to consider the impact of *Cothron* when it is decided. The motion to stay is denied.

### IV. Conclusion

The parties shall file position papers addressing whether Martinez has established an injury-in-fact sufficient for Article III standing based on the retention-policy

19

claims under Section 15(a). The motion to dismiss those claims is terminated for now. The position papers on injury in fact are due by April 14, 2022. Ralph Lauren's motion to stay the proceedings is denied, as is the motion to dismiss the Section 15(b) informed-consent claims. On the informed-consent claims, discovery shall proceed on the merits of the individual Plaintiff's claims and on the propriety of class certification. The parties shall confer on a proposed discovery schedule and file a joint status report by April 14, 2022. The tracking status hearing of April 15, 2022, is reset to April 22, 2022, at 8:30 a.m., but to track the case only (no appearance is required). Instead, the Court will review the position papers and the status report and set a schedule from there.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 27, 2022